Moore *vs.* The State of Georgia.

---

AUGUSTUS D. MOORE, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant in error.

1. In a prosecution under the 5th and 6th sections of the 7th division of the Penal Code, the bank bill, alleged to have been raised or altered, must be charged and proven to be *genuine.*

Indictment, from Fulton county. Tried before Judge BULL, at April Term, 1861.

Augustus D. Moore was put upon his trial under an indictment for the "offence of passing an altered bank bill," on the Farmers and Mechanics Bank, of Savannah, said bill having been "raised" from a one dollar bill to the denomination of a ten dollar bill, and falsely and fraudulently passed to one Riley H. Ferguson by the said Augustus D. Moore.

R. H. FERGUSON, on the part of the State, testified: that in December, 1860, he was selling apples from his wagon, in Atlanta, when prisoner offered to purchase four apples for twenty cents, if witness would change a ten dollar bill. Ferguson agreed to this, received the bill, and gave prisoner the

change. Baxter came up, and from what he said, witness went after prisoner to get his money back. On telling prisoner that he had passed a raised bill on him, prisoner replied, have I? and was returning the money received from witness when the marshal came up and arrested prisoner. Prisoner said he knew who put the bill on him, and he would give him hell about it. Witness identified the bill shown in Court as the one passed on him; he also saw prisoner have two other bills, which were shown in Court, one with a hole cut out.

DANIEL C. BAXTER testified, that he watched prisoner until he bought the apples, and then asked to look at the bill, and saw it was a raised bill. This witness also identified the bill. Left prisoner with Ferguson, and went after the marshal, returned with him just as prisoner was paying back his money to Ferguson. Prisoner was walking very fast when overtaken by witness and Ferguson, but did not run.

E. T. HUNNICUTT says he saw the bill when taken from prisoner in the guard house, together with the two other bills exhibited, and some rings, keys and jewelry. Prisoner had, when searched, one five dollar bill, one gold dollar, and eighty-five cents in change, all good money.

Two or three witnesses were introduced by prisoner, the substance of whose testimony was, that some time in December prisoner had changed a ten dollar bill for some unknown person.

The testimony being closed and the counsel for prisoner, in his argument, having stated to the jury that there was no sufficient evidence before them to justify a verdict of guilty, there being no proof that the bill was genuine, and no bill of any kind having been introduced in evidence, the Solicitor General proposed then to introduce the bill, to which prisoner objected, as it was then too late, by the rules of practice in criminal proceedings under the laws of this State. The objection was overruled and the bill introduced and read to the jury, without proof of its genuineness, to which action of the Court prisoner excepted.

The Court, among other things, charged the jury that it

was not necessary to prove the bill to be genuine, to which prisoner excepted.

The jury found a verdict of guilty, whereupon counsel for prisoner moved the Court in arrest of judgment, on the ground that there was no crime known to the laws of this State sufficiently alleged in the indictment, and that the verdict did not cure this apparent defect. This motion was overruled, and the defendant excepted.

A motion for new trial was made by counsel for prisoner, on the exceptions herein taken, and on the additional ground, that the verdict was against the evidence, which motion was refused, and defendant excepts.

A. W. HAMMOND, for plaintiff in error.

EZZARD, Solicitor General, pro tem., contra.

By the Court—LUMPKIN, J., delivering the opinion.

To move in a case like this for a new trial, because the verdict is contrary to evidence, is to bring the ground itself into odium. The defendant is shingled all over with guilt, and the evidence proves it. A more bold and palpable case of criminality is rarely brought before the Courts. And yet a new trial must be granted to this felon, or we must, according to our construction of the Penal Code, be ourselves guilty of an offence equal in turpitude to that of which Moore has been convicted.

By the 5th section of the 7th division of the Penal Code it is declared that, "if any person shall falsely and fraudulently alter, or be concerned in the false and fraudulent alteration of any *genuine* note, bill, check or draft of or on any bank as aforesaid, or falsely or fraudulently cause or procure the same to be done, such person so offending shall, on conviction, be punished by imprisonment and labor in the penitentiary for any time not less than three years nor longer than ten years."

And by the 6th section it is provided, " if any person shall fraudulently pass, pay, or tender in payment, utter or publish

Moore *vs*. The State of Georgia.

any false, forged, or counterfeit, or altered note, bill, check, or draft *as aforesaid*, knowing the same to have been falsely or fraudulently forged, counterfeited or altered, such person so offending shall, on conviction, be punished by imprisonment or labor in the penitentiary for any time not less than two years nor longer than ten years." Cobb's Digest, 801 and 802.

Can any doubt that the bill *raised* or altered has to be a *genuine* bill? If so, language has no meaning. It may be said with plausibility, that it is just as criminal to pass an altered or raised *counterfeit* bill as a *genuine* one; nay, more so, because the genuine bill is worth, although altered, its original value, whereas, a counterfeit bill is worth nothing. This may be, but the Legislature has not so said. And Courts sit to administer *the law*, not to make it. And how easy it was to make the proof, and thus prevent a notorious offender from escaping. There were a dozen experts, perhaps, attending this trial who could have proved the *genuineness* of the bill alleged to have been altered.

At any rate, we must administer the law as written, leaving it to some future Legislature to remedy the defect, if it be one.

It is said that the prisoner has escaped jail, and thus outlawed himself. For myself, I am prepared, and always have been, to dismiss the writ of error and refuse the party a hearing. Will not the Legislature authorize this to be done in all similar cases, when the State's attorney shall make proof of this fact by the production of the certificate of the jailor? Such a law would greatly subserve the purposes of justice.

Let the judgment be reversed.